IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ELIAS JUAREZ-SANCHEZ,

    Defendant.

No. 1:15-cr-00213-AA
No. 1:16-cv-01378-AA

OPINION & ORDER

AIKEN, District Judge.

This matter comes before me on Defendant Elias Juarez-Sanchez's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255. ECF No. 18. For the reasons discussed below, Defendant's motion is DENIED.

## BACKGROUND

Defendant is a citizen/national of Mexico who came to the United States in 2008. On May 9, 2011, Defendant pleaded guilty and was convicted of a controlled substance offense in Jackson County, Oregon.

After his state court conviction, Defendant was transferred into the custody of Immigration and Customs Enforcement ("ICE") and transported to Tacoma, Washington. On May 31, 2011, Defendant appeared before an Immigration Judge ("IJ") for a removal

proceeding, at which time he was denied voluntary departure and a deportation order was issued. Defendant was removed to Mexico on June 4, 2011.

Defendant returned to the United States and was arrested on state domestic violence charges in 2015 in Medford, Oregon. Following Defendant's guilty plea on the state criminal charges, he was indicted on federal charges for illegal reentry. Defendant entered into a plea agreement and pleaded guilty to illegal reentry. On June 16, 2015, he was sentenced to time served and three years of supervised release. On July 1, 2015, Defendant was once again deported from the United States.

Defendant promptly returned to the United States and was arrested in Medford, Oregon on October 28, 2015. He was indicted for illegal reentry in *United States v. Juarez-Sanchez*, Case No. 1:15-cr-00396-AA and has now pleaded guilty and been sentenced to time served.

Defendant does not speak English and all prior proceedings, including removal hearings and his state and federal criminal proceedings, were conducted with the assistance of a Spanish interpreter. Defendant now asserts that his native language is Nahuatl, an indigenous language spoken in certain areas of Mexico. Defendant claims that he does not adequately speak or understand Spanish.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner in custody under sentence may move the court that imposed the sentence to vacate, set aside, or correct the sentence on the ground that:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . .

28 U.S.C. § 2255(a).

To warrant relief, a petitioner must demonstrate that the error of constitutional magnitude had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht*'s harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.").

A petitioner seeking relief under § 2255 must file his motion within the one-year statute of limitations set forth in § 2255(f). The limitations period runs one year from the latest of four dates: (1) when the judgment of conviction became final; (2) when the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) when the right asserted is initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (alteration and emphasis in original) (quoting 28 U.S.C. § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011) (alteration in original, internal quotation marks and citation omitted). A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed

against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062-63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)); *see United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980). Conclusory statements in a § 2255 motion are insufficient to require a hearing. *Hearst*, 638 F.2d at 1194.

If a court denies a habeas petition, the court may issue a certificate of appealability if "jurists of reason could disagree with the district court's resolution of [the petitioner's] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see* 28 U.S.C. § 2253(c)(1). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his or her part." *Miller-El*, 537 U.S. at 338 (internal quotation marks and citation omitted).

## DISCUSSION

Defendant asserts that (1) his due process rights were violated in Jackson County Circuit Court and in this Court because he did not receive adequate translation services; (2) his underlying removal order was invalid because he did not receive adequate translation services during the removal hearing and because the IJ allowed inadmissible evidence and inadequately explained Defendant's rights; and (3) that his prior counsel was ineffective for failing to ascertain whether Defendant spoke Spanish. This case is appropriate for resolution without a hearing.

Many of the arguments Defendant raises in this motion were also raised by Defendant in a motion to dismiss in *United States v. Juarez-Sanchez*, Case No. 1:15-cr-00396-AA. I held an evidentiary hearing on that motion on November 29, 2016, ECF No. 54, at which I heard

testimony from Defendant and a number of other witnesses. On January 12, 2017, I denied the motion to dismiss. ECF No. 55. Federal courts may "take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue." *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotation marks and citation omitted). Accordingly, I take judicial notice of those related proceedings.

The Government contends that the motion should be denied because (1) it is untimely; (2) Defendant waived his right to collaterally challenge his prior conviction except on the grounds of ineffective assistance of counsel; and (3) Defendant's counsel was not ineffective.

## I. Timeliness

As noted above, a § 2255 motion must be made within one year of the latest of four dates: (1) when the judgment of conviction became final; (2) when the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) when the right asserted is initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; and (4) when the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. § 2255(f).

The statute of limitations for a § 2255 motion does not begin to run until the "expiration of the time during which [the movant] could have sought relief by direct appeal." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001). In this case, the Amended Judgment of Conviction was entered on June 19, 2015. ECF No. 17. Defendant did not file a direct appeal and, pursuant to Federal Rule of Appellate Procedure 4, his appeal period expired fourteen days
Page 5 – ORDER

after judgment was entered, or July 3, 2015. Fed. R. App. P. 4(b)(1)(A)(i). Defendant's § 2255 motion is dated July 5, 2016 and was filed on July 6, 2016. ECF No. 18. Defendant's motion is therefore untimely under 28 U.S.C. § 2255(f)(1).

Defendant relies on § 2255(f)(4) and asserts that his motion is timely because he could not have discovered the facts supporting his claims until the his prior attorney, Brian Butler, withdrew from his representation in December 2015 after learning of Defendant's claimed inability to speak or understand Spanish.

28 U.S.C. § 2255(f)(4) requires that the facts supporting the claim could not have been discovered earlier through the exercise of due diligence. "Due diligence does not require the maximum feasible diligence, but it does require reasonable diligence in the circumstances." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (internal quotation marks and citation omitted); *see also United States v. Ndiagu*, 591 F. App'x 632, 634 (9th Cir. 2015) (applying the holding of *Ford* to a motion brought under § 2255). Although a defendant may not understand the legal significance of facts at issue, he need only be aware of the facts themselves. *Ndiagu* 591 F. App'x at 634 (citing *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001)).

Defendant appeared in multiple state and federal court proceedings before Mr. Butler's withdrawal in December 2015. At all of these proceedings, Defendant was assisted by Spanish interpreters. At Defendant's 2011 removal hearing, Defendant affirmatively requested that the proceedings be translated into Spanish. None of Defendant's attorneys or translators ever raised a concern about Defendant's ability to understand Spanish. If Defendant did not speak Spanish, due diligence would have discovered the deficiency before the judgment at issue in this motion became final and long before December 2015. At the very least, Defendant himself would have been aware of the problem, even if he did not understand its legal significance.

I therefore DENY Defendant's motion as untimely. In an abundance of caution, however, I will address the other issues identified by the Government.

## II. Waiver

The Ninth Circuit recognizes the contractual nature of plea agreements and measures plea agreements by "basic principles of contract interpretation." *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2015). Courts generally enforce an appeal waiver when (1) the language of the waiver encompasses the defendant's right to appeal on the grounds raised; and (2) the waiver is knowingly and voluntarily made. *Id.* at 461 (citing *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005), *overruled on other grounds by United States v. Castillo*, 496 F.3d 947, 957 (9th Cir. 2007)). To determine if a waiver was knowing and voluntary, courts examine "what the defendant reasonably understood to be the terms of the agreement when he pleaded guilty." *Medina-Carrasco*, 815 F.3d at 461 (internal quotation marks and citation omitted). Courts look to "the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily." *United States v. Watson*, 582 F.3d 974, 986 (9th Cir. 2009) (internal quotation marks and citation omitted). Courts will also enforce waivers of the right to bring a § 2255 motion as long as the defendant expressly waives the right. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).

In this case, the parties entered into a plea agreement on June 16, 2015. Gov't Resp. Ex. 1. By the terms of that plea agreement, Defendant "knowingly and voluntarily . . . waives the right to file any collateral attack, including a motion under Title 28, United States Code, Section 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel." Gov't Resp. Ex. 1, at 3. The plea agreement is signed by

Defendant, Mr. Butler, and an interpreter. Gov't Resp. Ex. 1, at 4. The interpreter's signature memorializes that she "fully and accurately" translated both the agreement and the discussions between Defendant and Mr. Butler. Gov't Resp. Ex. 1, at 4.

At Defendant's change of plea and sentencing, I asked Defendant if all of the documents had been read to him in Spanish and he responded that they had. Gov't Resp. Ex. 7, at 5. During my sentencing colloquy with Defendant I asked him directly if he understood the plea agreement he had entered into with the Government and he responded that he did. Gov't Resp. Ex. 7, at 13. At my request, the Government recited the terms of the plea agreement into the record, including Defendant's waiver of the right to collaterally attack his sentence. Gov't Resp. Ex. 7, at 14-17. That having been done, I asked Defendant if the Government's recitation matched his understanding of the agreement and he responded that it did. Gov't Resp. Ex. 7, at 17.

Defendant does not claim that the waiver provision contained in his plea agreement was not knowing or voluntary. There is nothing in the circumstances surrounding the plea agreement that would lead me to conclude that it was not knowing or voluntary. I therefore conclude that the waiver provision of Defendant's plea agreement is enforceable by its terms and that Defendant has waived all collateral challenges except for those based on ineffective assistance of counsel.

### III. Ineffective Assistance of Counsel

Courts use a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 562 U.S. 115, 121 (2011). Under this test, a defendant must prove that counsel's assistance was deficient and that the deficient performance prejudiced the defense. *Id.*; *see also Schurz v. Ryan*, 730 F.3d 812, 815 (9th Cir. 2013), *cert. denied*, 135 S. Ct. 141 (2014).

To prove the deficiency of counsel's performance, the defendant must show counsel made errors so serious that his "'representation fell below an objective standard of reasonableness'" under prevailing professional norms. *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The court must inquire "whether counsel's assistance was reasonable considering all the circumstances" at the time of the assistance. *Strickland*, 466 U.S. at 688.

In assessing whether counsel's performance was deficient, courts must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and make every effort 'to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Hibbler v. Benedetti*, 693 F.3d 1140, 1149 (9th Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Ultimately, the defendant's "burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

"To satisfy the prejudice prong under *Strickland*, a defendant must show 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Saesee v. McDonald*, 725 F.3d 1045, 1048 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Saesee*, 725 F.3d at 1048 (quoting *Strickland*, 466 U.S. at 694).

The court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant[.]" *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

Defendant appears to assert that Mr. Butler was ineffective because he (1) failed to investigate whether or not Defendant spoke Spanish; (2) failed to challenge Defendant's underlying deportation on the grounds that the IJ inadequately explained Defendant's appeal rights; and (3) failed to challenge Defendant's underlying deportation on the grounds that the IJ relied on inadmissible evidence and failed to adequately advise Defendant of his right to object.

## A. Reasonable Investigation

Defendant asserts that he is a native speaker of Nahuatl and claims not to speak or understand Spanish above a "Novice-Low" level.[1] Gov't Resp. Ex. 2, at 1. According to Defendant, Mr. Butler never inquired as to what Defendant's native language was and "just proceeded with a Spanish translator." Def. Mot. 6. According to Defendant, he can "understand only a small bit of Spanish and did not understand what Mr. Butler was explaining to [him] about [his] case." Def. Mot. 6. Defendant claims that Mr. Butler was ineffective for failing to investigate what language Defendant spoke.

In the context of an ineffective assistance of counsel claim, "'counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Ayala v. Chappell*, 829 F.3d 1081, 1103 (9th Cir. 2016) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

As a preliminary matter, I note that Defendant does not assert that he ever told Mr. Butler that he did not speak Spanish, nor does Defendant assert that he ever indicated an inability understand the Spanish interpreter during the course of Mr. Butler's representation of Defendant in this case.

---

[1] Defendant took a language Listening Proficiency Test in May 2016 and tested at "Novice-Low," for Spanish, the lowest possible level of language proficiency. "At the Novice-Low sublevel, listeners are able occasionally to recognize isolated words or very-high frequency phrases when those are strongly supported by context. These listeners show virtually no comprehension of any kind of spoken message, not even within the most basic personal and social context." Gov't Resp. Ex. 1, at 1.

In 2011, Defendant appeared at a series of hearings relating to a charge of Possession of Cocaine in Jackson County Circuit Court. Gov't Resp. Ex. 3. Defendant was assisted by a Spanish interpreter and Defendant's answers were appropriately responsive to all questions asked. There was nothing in these proceedings to indicate that Defendant did not understand Spanish.

In May 31, 2011, Defendant appeared before an IJ for his removal proceeding. As part of that proceeding, the IJ asked Defendant what language he wished to proceed in and Defendant affirmatively responded that he wished to proceed in Spanish. Gov't Resp. Ex. 4. Defendant responded appropriately to all questions put to him in Spanish by the IJ. Gov't Resp. Ex. 4.

In 2015, Defendant appeared in Jackson County Circuit Court on domestic violence charges. Gov't Resp. Ex. 3. As before, Defendant was assisted by a Spanish interpreter. Gov't Resp. Ex. 3. Defendant's answers were appropriately responsive to all questions and there is nothing to indicate that Defendant did not understand either his interpreter or the proceedings.

After Defendant was arrested by ICE in May 2015 he was advised of his *Miranda* rights in Spanish. Gov't Resp. Ex. 5, at 1. The ICE police report indicates the Defendant was questioned in Spanish and made a number of incriminating statements before Defendant invoked his right to an attorney. Gov't Resp. Ex. 5, at 1-2. Both the statements and the invocation of his *Miranda* rights indicate that Defendant was able to speak and understand Spanish.

On June 16, 2015, Defendant appeared before me to enter a plea of guilty to a charge of illegal reentry and accept his sentence. Gov. Resp. Ex. 7. As in his other proceedings, Defendant was assisted by a Spanish interpreter. Defendant did not express any difficulty in understanding his interpreter or the questions I asked him. My practice when dealing with parties who require the services of an interpreter is to question them at length to ensure that they

are able to understand both their interpreter and the nature of the proceeding. I followed that practice when taking Defendant's plea in June 2015 by engaging in a colloquy with Defendant in which I asked him about his background, the services of the interpreter, his understanding of the plea agreement, the consequences of pleading guilty, and the factual basis for his plea. After satisfying myself of his understanding, I accepted Defendant's guilty plea. Defendant's answers throughout the colloquy were appropriately responsive to my questions. When told that he needed to answer with an audible "yes" or "no" instead of "uh-huh," Defendant complied. Gov't Resp. Ex. 7, at 4-5.

The following exchange, which took place just before sentencing, is of particular significance, because it demonstrates that Defendant understood both the questions, which were put to him in Spanish, and the import of the proceeding:

> THE COURT: Sir, I'm happy to hear anything you wish to tell me.
> THE DEFENDANT: About what?
> THE COURT: Anything you think I should know before I impose sentence in this case. It's your opportunity to talk to me.
> THE DEFENDANT: No, I don't have anything to say.
> THE COURT: How old are the six children?
> THE DEFENDANT: The eldest is 11, ten, six, three, a year and a half, and four months.
> THE COURT: It's a big decision. You have no choice. But you will be deported to Mexico. It's a big decision for the mother of the children to make a move to come down to Mexico. That choice is difficult because the children have some opportunity here that they won't have in Mexico. That's a tough call. And it's very difficult to think about the separation. But I need to tell you that if you come back without the legal paperwork to be here, it's highly likely that you will be picked up again and have a longer sentence. Do you understand?
> THE DEFENDANT: Yes, they told me already. I do understand.
> THE COURT: You may qualify at some point to be able to come back here. And it would be worth the effort to do it right and come, and you would be welcome here. So don't give up. But please, if your family doesn't follow you for whatever reason, and you get a call to come up and help them, it's not going to helpful for you to come and get caught and go back to prison. I'm telling you all this because you are young and it's hard to watch people try to make the right decision for the family, and they put themselves in a bigger, difficult situation.
> THE DEFENDANT: Yes, I understand.

Gov't Resp. Ex. 7, at 21-22.

Under these circumstances, Mr. Butler was not presented with any information that would have led a reasonable attorney to believe that Defendant did not speak or understand Spanish. I conclude that Mr. Butler's representation was not ineffective based on a failure to investigate Defendant's native language.

### B. Defendant's 2011 Removal Proceedings

Defendant alleges that Mr. Butler was ineffective for failing to challenge Defendant's underlying removal on the basis that (1) the IJ failed to properly advise Defendant of his appeal rights; (2) the IJ relied on inadmissible evidence; and (3) the IJ failed to properly advise Defendant of his right to object to evidence. Defendant mentions, but does not otherwise address these issues in his motion. Defendant did, however, raise and argue the exact same issues in his motion to dismiss the indictment in *United States v. Juarez-Sanchez*, Case No. 1:15-cr-00396-AA. After an evidentiary hearing, I issued an Opinion and Order in which I found that Defendant was appropriately advised of his appeal rights and his right to object and that the IJ properly considered documents establishing Defendant's underlying state court conviction. I accordingly denied the motion to dismiss. ECF No. 55 in Case No. 1:15-cr-00396-AA. I find no reason to disturb my earlier ruling.

In light of my ruling in Case No. 1:15-cr-00396-AA, Defendant was not prejudiced by Mr. Butler's failure to raise the same issues in the present case.

### CONCLUSION

For the reasons set forth above, Defendant's Motion to Vacate or Correct Sentence pursuant to 28 U.S.C. § 2255, ECF No. 18, is DENIED. All other pending motions are DENIED as MOOT. The Court declines to issue a certificate of appealability on the basis that petitioner

has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

It is so ORDERED and DATED this 11th of April, 2017.

*Ann Aiken*
Ann Aiken
United States District Judge